## Case No. 2,434.

### CARR v. GALE et al.

[2 Ware (Dav. 328) 330.][1]

Circuit Court, D. Maine. Oct., 1847.

BANKRUPTCY — ACTION BY ASSIGNEE — PROOF OF TITLE—JURISDICTION OF CIRCUIT COURT — TROVER — DEMAND — POINTING OUT OBJECTION TO TESTIMONY—PROOF OF FRAUD.

1. In an action of trover against Gale and Hemenway, by the assignee of Hemenway, for the conversion of a store of goods in the possession of Hemenway, claimed by Gale as owner, and by Hemenway as the agent of Gale, and claimed by the plaintiff as part of the assets of Hemenway's bankruptcy, it was held that the circuit court had jurisdiction against Hemenway as well as Gale.

2. The district court has, under the bankrupt law [5 Stat. 445], exclusive jurisdiction of all controversies, between the assignee and the bankrupt, arising out of his bankruptcy, and depending on his quality or status, and involving his rights and immunities as a bankrupt.

3. But when the bankrupt has possession of property claimed by the assignee as part of the assets of the bankruptcy, and the bankrupt claims to hold them, not as a bankrupt but under an independent title as the agent of a third person, he is simply a person claiming an adverse interest, and the circuit court has jurisdiction.

4. The assignee, to maintain his title to sue, need prove only the decree of bankruptcy and his appointment. This is prima facie evidence of his title under the law, without producing the bankrupt's petition to be declared a bankrupt.

5. In trover, it is not necessary to prove a demand of the goods and a refusal, where there has been an actual conversion.

6. When a party objects to the testimony of a witness, part of which is admissible and part inadmissible, he is bound to point out that part to which the objection lies, or the objection will be overruled as covering too much.

7. In a case where fraud is charged, and the fraud is attempted to be proved by circumstantial evidence, facts which have no tendency to prove the frauds charged, but merely tend to create a personal prejudice against the party, are inadmissible; but if the court can see that they have any tendency to prove the fraud,

[1] [Reported by Edward H. Daveiss, Esq.]

though it be but slight, they are admissible to be submitted to the jury, who are the proper judges of their weight.

At law. This was an action of trover brought by [Joshua W.] Carr as assignee of Samuel C. Hemenway, one of the defendants, against Stephen Gale and Hemenway, for the conversion of a store of goods in Bangor. The plaintiff claimed them as part of the estate of Hemenway, which should have been surrendered to him as his assignee. The defendants claimed them as the proper goods of Gale, in the possession of Hemenway as his agent. The defendants pleaded separately the general issue, and the jury returned a verdict for the plaintiff for $5,030.45. The defendants filed a motion for setting aside the verdict, and for a new trial.

[See decision of Woodbury, Circuit Justice (Case No. 2,435), which apparently was rendered upon the same motion.]

Deblois & McCrillis, for plaintiff.
Daveis v. Rowe, for defendants.

WARE, District Judge. The first question raised by the defendants' counsel is one as to the jurisdiction of the court. It is denied that this court has jurisdiction over the case, at least as to one of the defendants, Hemenway, and that if any action can be maintained against him, this can be only in the district court. The 6th section of the bankrupt law [5 Stat. 445] gives to the district court jurisdiction over all matters and proceedings in bankruptcy in the most comprehensive terms, and this jurisdiction is declared to extend in all cases and controversies arising between the bankrupt and any creditor or creditors claiming any debt or demand under the bankruptcy, to all cases between such creditor or creditors and the assignee of the estate, and to all cases between such assignee and the bankrupt. By the 8th section, concurrent jurisdiction is given to the circuit court, with the district court, of all suits at law and in equity, which may or shall be brought by any assignee of the bankrupt against any person or persons, claiming an adverse interest, or by such person or persons against the assignee, touching any property or rights of property of said bankrupt transferable to, or vested in, the assignee. The jurisdiction of the court is then free from doubt as to Gale, as he appears claiming an adverse interest. But in carving out a portion of the jurisdiction of the district court to be exercised by the circuit concurrently with the district court, the act omits controversies between the assignee and the bankrupt, and it is therefore said that Hemenway is not bound to answer in this court. It may be admitted that the circuit court has no jurisdiction over controversies between the assignee and the bankrupt, arising out of his quality or status as a bankrupt, and dependent on that. For instance, by the 3d section of the law, all the property and rights of property of the bankrupt are, by virtue of the decree of bankruptcy, declared to be, by mere operation of law, transferred to and vested in the assignee, subject to certain exceptions. The proviso enumerates these exceptions. They are—the wearing apparel of the bankrupt and his family, and such household furniture and other necessary articles as shall be set apart for his use by the assignee subject to the decision of the court. These do not pass to the assignee. A question may arise whether a watch, or articles of personal ornament, for himself, or his wife, or children, fall within the exceptions, as wearing apparel, or other necessary articles. In re Grant [Case No. 5,693]. This would be a matter arising out of the bankruptcy, and involving his rights as a bankrupt under the bankruptcy, and if a controversy arose on the subject. would seem to be exclusively within the jurisdiction of the district court. Again, a bankrupt may acquire property after he has filed his petition, and before a decree of bankruptcy, or before his discharge, by his own industry, or by contract, inheritance, devise, or gift. And a question will arise between the bankrupt and his assignee, whether this passes to the assignee as part of the assets of the bankruptcy, or is an acquisition for the benefit of the bankrupt himself. The solution of this question involves the consideration of his rights and immunities as a bankrupt. In re Williams [Case No. 17,701]. The clause in the 6th section of the law, giving jurisdiction to the district court over cases and controversies between the assignee and the bankrupt, naturally refers to cases of this description, involving the consideration of his personal status and the rights which he may claim in his quality as a bankrupt; and as no similar language is used in the 8th section, it may be that the jurisdiction over this class of cases is exclusive. But in the present suit, Hemenway sets up no claim as a bankrupt; he insists on no right in relation to this property derived from his bankruptcy, or any way connected with it. The goods which he is charged with converting are indeed claimed by his assignee as part of his assets, but he makes no claim to them as such. His defense is that the goods were never his, but belonged to Gale, and were in his possession as the agent of Gale; and the suit is not against him as a bankrupt, but simply as a wrong-doer. I cannot see that he is any more exempted from the jurisdiction of this court than he would be if the property, the conversion of whch he is charged with, had belonged to another estate. In this case he is simply a person claiming an interest adverse to the assignee.

Another ground, on which a new trial is demanded, is that the plaintiff has shown no title to claim the property, admitting that the goods belonged to Hemenway before his bankruptcy, and so constituted a part of his

assets. The plaintiff, to prove his title, offered in evidence the decree of bankruptcy and his appointment as assignee, but this, it said, is insufficient without offering the petition also. The ground of this objection is, that the district court, sitting in bankruptcy, is a court of limited and special jurisdiction, and that, as such, no presumption can be made in favor of its jurisdiction, but that this must be made to appear affirmatively by spreading before this court the whole proceedings. The decisions under the English bankrupt law and those of our own courts under the former bankrupt law, have been referred to in support of this position. The former bankrupt law was borrowed, with some alterations, from the English system (Lummus v. Fairfield, 5 Mass. 249, 250), and was widely different from the last law. It was far more complicated in its details, and operose in its modes of proceeding. Under the English system, it is necessary for the assignee to prove—1st, the commission,—2d, the petitioning creditor's debt,—3d, the trading,—4th, the act of bankruptcy,—and 5th, the assignment. Eden, Bankr. Law, 252. The 3d section of the late act seems to have been framed with a view to supersede the necessity of proving such facts. It provides that all the property and rights of property of the bankrupt, who has been declared such by a decree of the proper court, shall, by mere operation of law, from the time of such decree, be deemed to be divested out of such bankrupt and without any conveyance shall, by force of the decree, be vested in such assignee as the court shall appoint. It appears to me, from the plain words of this section, that all which is necessary for the assignee to show in the first instance, is the decree and his appointment under it. It obviously was the intention of the statute to simplify the proceedings and dispense with the cumbrous machinery of the former law. The analogies, therefore, derived from the practice under that law, apply with less force. That dispensed, in favor of the assignee, with two of the requisites of the English law, that is, proof of the trading and the act of bankruptcy, which were held to be conclusively proved by the commission. Laws U. S. 1800, c. 19, § 56. The policy of the late act was to render the proceedings still more simple, expeditious, and cheap. The assets, instead of coming to the assignee through a conveyance by commissioners, passed directly, without any form of conveyance, by operation of law. Under the voluntary branch of our law, no one of the five things required to be proved by the English law can be properly said to exist, or at least no one is essential to the proceedings. No commission of bankruptcy is issued; there is no petitioning creditor, and under the English law his petition need not be proved; no trading is necessary, and no act of bankruptcy is required, and no assignment is made. The title deed of the assignee is the decree, and it appears to me that the statute makes this prima facie evidence of the assignee's right to the property. If this title may be impeached for any irregularities in the antecedent proceedings, the burden of impeaching is thrown on the other party.

Another objection to the verdict is, that there was no evidence sufficient to support the action, there having been no proof of a demand of the goods and a refusal to deliver them, before the action was brought. The action is trover, an action of tort, but the tort consists not in the taking but the conversion. If there was an unlawful taking, this was waived by the form of the action, and the defendant is admitted to have obtained the possession lawfully, that is, by finding. A conversion must therefore be proved. If the defendant has done nothing with the goods beyond what he might do as finder, this action cannot be maintained until there has been a demand by the owner and a refusal to deliver them. A refusal is then ordinarily held to be equivalent to a conversion, because it ordinarily amounts to a denial of the owner's right. But if the refusal is justified, or excused, by any reasonable or just cause, as if it be on a fair doubt whether the person who makes the demand be the true owner, the refusal will not be equivalent to a conversion, provided the party acts in good faith, and does not intend to make any appropriation of the goods to the injury of the real owner. 1 Archb. N. P. p. 458; 2 Greenl. Ev. §§ 644, 645, and the cases cited. A demand and refusal is only one mode of proving a conversion. But a sale is a conversion, as much as an actual consumption of the goods would be. Featherstonhaugh v. Johnston, 8 Taunt. 237. A demand, then, would have been a useless and unmeaning formality.

Another reason urged for a new trial is, that certain parts of the evidence offered by the plaintiff were irrelevant and improper to be submitted to the jury. This objection relates principally to the deposition of Sylvester and the testimony of Bryant. To understand the bearing and applicability of this evidence, it will be necessary to advert to some antecedent facts. In 1836. Hemenway failed in trade and transferred a large amount of property, being his whole stock in trade, to assignees, for the benefit of such of his creditors as should become parties to the assignment and release him from his debt. Some of his creditors refused to come in under the assignment, so that, after the distribution of the estate, there remained a considerable amount of outstanding claims against him. Hemenway then left Bangor and was absent a considerable time, and returned in 1838, when he again went into business as the agent of Gale, his brother-in-law, residing in Portland. While thus engaged in business, one of his old creditors sued him and summoned Gale as his trustee. Gale was discharged on his disclosure, a

copy of which was offered in evidence in this case by the plaintiff. The ground assumed by the plaintiff was, that all this time, from 1838 to 1842, Hemenway was trading on his own capital, was in fact the owner of the goods, and that the title of attorney of Gale was a mere cover, he having no interest in the store. As proof of the good faith of the parties and that the property was in fact Gale's, evidence was offered by the defendants tending to show that Hemenway was poor and utterly destitute of property. The testimony offered by the plaintiff was to show that Hemenway had property of his own, and to overcome the presumption of good faith arising from his apparent poverty. Sylvester testified that he paid Hemenway a bill after he made his assignment, and that Hemenway stated to him that he had drawn off bills to the amount of $4,000, and balanced the accounts in his books before delivering them to his assignees, which were then due and unpaid. Bryant testified that after the books came into his hands, as one of the assignees, several persons called on him and stated that they were indebted to the estate, but that on turning to the ledger he found the accounts balanced. He also testified that after the keys to the store were delivered to him a considerable amount of goods was abstracted from the store, and that Hemenway was concerned in taking them away. From this evidence, the counsel for the plaintiff argued that Hemenway had reserved to himself, from the wreck of his fortune in 1836, a considerable sum, and that it was with this capital that he commenced business in 1838. Connecting this with the disclosure of Gale, who said that he had no interest in the store, and the further fact that, though a large business was carried on under Gale's name, he gave no attention to it, and never visited Bangor from 1838 to 1842, the plaintiff's counsel contended that the title of attorney was a mere blind to enable Hemenway, under Gale's name, to resume business for himself and set his creditors at defiance. There was other evidence besides this, from which the jury might infer that Hemenway had an interest in the store beyond that of a mere agency. If any credit was due to this evidence tending to show that he had an interest in the goods, it could not be considered immaterial to show that Hemenway had property of his own. Whether he had or had not, was a fact to be inferred altogether from circumstantial evidence. Now it is evident that circumstances of this kind may be made to bear with more or less force, according to their connection with other facts admitted or proved in the case. How far they contributed to sustain the plaintiff's case was a question for the consideration of the jury. The question now is whether the jury ought to be allowed to hear such evidence; that is, whether it had any tendency to prove the plaintiff's case. The plaintiff's case stood on the charge of a fraudulent covering of Hemenway's property to screen it from his creditors. Unless this was made out, he failed. It was, therefore, very material to show that he had property to conceal. The evidence in question went to prove this fact, by showing that he had fraudulently abstracted a portion of his assets on the occasion of a former failure in business; and that at a period not so distant but that he might reasonably be supposed to have retained a portion to recommence business in 1838. It was not, therefore, evidence that went merely to create in the minds of the jury a personal prejudice against him, but to a certain extent tended to sustain a material point in the plaintiff's case. It appears to me, therefore, that it was evidence proper to be submitted to the jury. It is said that this matter had before been submitted to arbitration, and it was contended that it was not now open to be re-examined. But that was between Hemenway and the parties to the assignment. The present plaintiff, and the creditors whom he represents, were no parties to that arbitration, and the decision of the arbiter is not binding on them. It is true that fraud is not to be presumed, but it is also true that it may be inferred from circumstances, and often can be proved in no other way.

Another objection was made to a part of the testimony of Bryant. In answer to a question of the plaintiff's counsel he stated, that several persons called on him and said that they were indebted to the store, but on turning to the books he found the accounts balanced. The defendants objected to this testimony without the production of the books. But Bryant did not testify here to the contents of the books. He was not asked who called on him, nor how many, nor what was the amount of the accounts so balanced. The fact, to which he testified, was not one which appeared in the books, but was collateral to them. It was simply that persons called on him and stated that they were indebted to the store, but when he looked into the books he found the accounts balanced. The production of the books could neither confirm nor disprove the statement of the witness. All that they would have shown was, that there were some accounts which were balanced and others which were not; but the material fact, whether there were any persons who called on him as he stated, was a fact known only to the witness himself. There is, however, one fact stated by Bryant, which, perhaps, in strictness, was not admissible without the production of the books. It is that when persons called on him and said that they were indebted to the store he looked at the ledger and found the account balanced, but that in examining the day-book he found no corresponding entries in that. No names of individuals were given and no sums mentioned, but the naked fact alone was stated. Now an inspection of the

books might have verified or disproved the fact, and for this purpose perhaps they ought to have been produced. But when the objection was made, this distinction was not noticed. The objection was general and in my opinion covered too much, and so it was properly overruled. The party objecting to the testimony of a witness, part of whose testimony is admissible and part of which is inadmissible, is bound to point out and discriminate the part to which the objection applies. If, however, the discrimination is not made, and objectionable testimony is permitted to go to the jury, the court may undoubtedly in its discretion grant a new trial for this cause. But it ought not to do it, when the testimony is of such a character as probably would not and ought not to have changed the verdict. And such I think this testimony to have been in this case.

The defendants offered the schedule annexed to Hemenway's petition in bankruptcy, to prove the property in Gale. This was objected to and ruled to be inadmissible. The defendants contend that it ought to have been admitted. It is generally true, that, in an action by the assignee, the bankrupt is a competent witness to diminish but not to increase the fund. Eden, Bankr. Law. pp. 361, 366. His interest in the surplus is an obvious reason for excluding his testimony when it goes to increase the fund, but when it goes to diminish it, he is testifying against his own interest. But the evidence here offered was the mere declaration of the bankrupt, under oath it is true, but still only his declaration, without any opportunity of the present plaintiff to cross examine him. And here the bankrupt is a party and of course he cannot give in evidence his own declaration in his own favor. But it is said that it ought to have been admitted in favor of Gale. To determine this, let us look at the posture of the case. The plaintiff proceeds on the ground that there was a fraudulent agreement between the parties to cover the property of Hemenway and keep it from his creditors under the name of Gale. And this evidence is nothing more than the declaration of one of the parties to disprove the fraud. It appears to me on this ground that it is inadmissible.

There was other testimony admitted which was objected to, as irrelevant and as having a tendency to create a prejudice against the defendants. This related to the mode of conducting the business in the store, and the contemporaneous declaration of Hemenway after the sale by Gale to Hersey. Hersey was a connection by marriage both of Hemenway and Gale, they each having married a sister of his, and he had for several months prior to the sale been employed as a clerk in the store. This testimony tended to show that Hemenway claimed and exercised the same control over the business after the sale, when, if it had been in fact what it purported to be, he was a mere clerk in the store, that he had

done when carrying on the business as the agent of Gale. Now, the question at issue between the parties was whether, at the time of the sale to Hersey, the property was in Hemenway or Gale. The ground, on which the admission of this testimony was claimed, was that if it satisfied the jury that Hemenway had an interest, that is, was the owner of the goods after the sale, it threw back its light and tended to illustrate the antecedent state of things. Whether it was legally admissible for that purpose is now the question. It appeared to me that it was. In a case where fraud is charged, and the charge is to be made out by circumstantial evidence, it is not easy to draw the precise line separating those circumstances which are fairly admissible to prove the fraud from those which ought to be excluded. Evidence which has no connection with the matters in issue, but merely tending to create a personal prejudice against one of the parties, certainly should be excluded. But if it have a connection, how near that must be to render it admissible, or how remote to exclude it, is not easy to determine by any universal and exact definition. The acts of the parties near the time when the fraud is alleged to have been committed, and connected with it, seem to be properly admissible. The evidence in question was of this description. The jury might infer from it that Hersey, the apparent owner, was not the real owner; that though he was clothed with the ordinary indicia of ownership, this was but a disguise to conceal the real ownership of Hemenway. Now, as the great question is whether the goods belonged to Hemenway before the sale, if it be shown by probable evidence that they belonged to him after, and notwithstanding the sale, this is a fact that would tend, connected with other circumstances, to satisfy the mind that they were his before; and that this sale was but a continuation of that system of disguised ownership which was alleged to exist from 1838 to the time of the sale. It appeared to me at the trial that it was evidence competent to be given and not wholly irrelevant, and how far it tended to support the plaintiff's case was for the consideration of the jury.

Another decision of the court, to which exception is taken, involves rather a rule of practice than strictly of law. Hersey, the purchaser from Gale, was called as a witness by the plaintiff to prove the bill of sale, and nothing further. The defendants then claimed the right to cross-examine him to the whole cause. This was objected to by the plaintiff. It was ruled by the court that the cross-examination must be confined to the subject-matters inquired of in the direct examination; that, if the defendants wanted him as a witness, they must call him after they had opened their case to the jury, and examine him as their own witness. Subsequently he was called by the defendants and examined. The practice of courts in this respect is not

uniform. The rule in the English courts is, that if a witness is called and sworn, though he is asked but a single question, the other party has a right to cross-examine him to the whole case as a witness of the adverse party. 1 Greenl. Ev. § 445. And the same practice prevails in some of the courts in this country. In this court the rule has been different. It has been repeatedly laid down by the late Justice Story, in the terms in which the court ruled in the present case, and by the decision in Philadelphia & Trenton Railroad Co. v. Stimpson, 14 Pet. [39 U. S.] 448, it is established as a rule of practice in the courts of the United States.

After the evidence was closed, and the arguments of counsel, the counsel for the defendants asked the court to instruct the jury that the plaintiff could not maintain the action because there was no evidence of a conversion by either of the defendants. The court declined to give that instruction, but instructed the jury that if they were satisfied from the evidence that in 1838, when the letter of attorney was given by Gale to Hemenway, it was given for the purpose of enabling Hemenway to do business on his own capital and for his own benefit, and was so used, the property being in fact and in truth in Hemenway, then, by force of the statute, the property became vested in the assignee of Hemenway, and that the sale by Gale under color of this disguised title was evidence of a conversion by Gale. And secondly, that if the sale was made by an arrangement and contrivance, between Hemenway and Gale, to place the property still further beyond the reach of the assignee, it was evidence of a conversion both by Gale and Hemenway. Under these instructions the jury found a verdict for the plaintiff. It is quite certain that the court could not give the direction asked by the defendants, because, if the jury found that the property was in Hemenway, the sale was a conversion. To maintain the action of trover, the plaintiff must prove property and the right of possession. It is not necessary to prove that he has had the actual possession and that it has been disturbed by the defendant. An executor, who has never had the possession of the goods, may maintain trover for a previous conversion of the goods of his testator. 2 Greenl. Ev. § 461.

The last ground, on which the defendants asked for a new trial, is that the verdict is against the weight of evidence. There was evidence on both sides, and it was the province of the jury to determine on which side the balance inclined. By the theory of the common law, they are the exclusive judges of the weight of evidence. But it is also true when the court is satisfied that the jury, from any cause, have fallen into an error and decided against the clear preponderance of the evidence, the verdict will be set aside and the case sent to another jury. If, however, there is contradictory evidence, and the conclusion is dependent on the degree of credit given to the witnesses, or if the facts proved, or admitted, are such that different conclusions may be inferred from them, the court will not disturb the verdict, unless the jury have decided against the clear preponderance of the evidence. In this case there was but little if any conflict in the testimony, that is, the facts, proved by the testimony on one side, were not impugned by contradictory testimony on the other so as to bring them into doubt. The conflict was in the facts themselves. There is one series of facts proved by the defendants which, standing alone, lead directly, if not irresistibly, to one conclusion, but there is another series, part of which are equally well proved and which, if not controlled by any facts tending to a different conclusion, would lead directly to the opposite decision. When the verdict is to be deduced from opposite and conflicting analogies, it belongs exclusively to the jury to determine the force and value of these analogies. All that the court can do is to assist their judgment, by general observations on the nature of the evidence. It is not pretended that there were any such remarks in this case as had a tendency to preoccupy the minds of the jury by any notions adverse to the defendants. It would seem that they were rather of an opposite tendency, for one of the reasons urged for a new trial is that the verdict is against the opinion of the court. But the court has no authority to substitute its own judgment for that of the jury, when they have deliberately considered and decided the case. It is only when they have, from wantonness, or caprice, or negligence and inattention, rendered a verdict palpably erroneous, that the court will interfere. And the court will sometimes infer this want of due attention on the part of the jury, when the verdict is clearly against the weight of evidence. But to do this, when the evidence is nearly balanced, would be an encroachment on the proper province of the jury. On the whole my opinion is that judgment should be entered on the verdict. New trial refused.

[NOTE. For denial of a subsequent motion for a new trial on the ground of newly-discovered evidence, see Case No. 2,433.]